1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   FREDERICK STOCCO, an individual              CASE NO. 12-CV-1291 WQH
     and KATHLEEN STOCCO, an                      (DHB)
12   individual,
                                                  **ORDER**
13                               Plaintiffs,

14          vs.

15   GEMOLOGICAL INSTITUTE OF
     AMERICA, INC., a California
     Corporation; and Does 1 through 100,
16
                                 Defendant.
17

18   HAYES, Judge:

19          The matter before the Court is the Motion to Dismiss filed by Defendant Gemological

20   Institute of America, Inc.  (ECF No. 10).

21                          **PROCEDURAL BACKGROUND**

22          On April 19, 2012, Plaintiffs Frederick Stocco and Kathleen Stocco filed a complaint

23   in San Diego Superior Court against Defendant.  (ECF No. 1). On May 29, 2012, Defendant

24   removed the complaint to this Court.  (ECF No. 1-3).

25          On July 10, 2012, Plaintiffs filed the First Amended Complaint ("Complaint") against

26   Defendant, asserting the following claims for relief: (1) fraudulent misrepresentation; (2)

27   negligence; (3) breach of written contract; (4) fraud in the inducement; (5) failure to provide

28   franchise offering circular, in violation of California Corporation's Code section 31119; and

1  (6) unfair business practices, in violation of California Business & Professions Code section

2  17203. *Id.*

3      On July 20, 2012, Defendant filed a Motion to Dismiss as to claims three, four, five, and

4  six of the Complaint. (ECF No. 10). On August 13, 2012, Plaintiffs filed a Response. (ECF

5  No. 12). On August 20, 2012, Defendant filed a Reply. (ECF No. 13).

6                           **ALLEGATIONS OF THE COMPLAINT**

7      ... 9. At all relevant times, GIA represented itself (and continues to represent
itself) as a nonprofit institute, whose mission is to "ensure the public trust in
8  gems and jewelry by upholding the highest standard of integrity, academics,
science, and professionalism through education, research, laboratory services,
9  and instrument development." GIA is the global leader in gem grading. A GIA
gem grading certificate significantly increases the value of a gem across the
10 world. The GIA gem grading certificates can only be issued by gem grading labs
authorized by GIA to issue GIA gem grading certificates. GIA's gem grading
11 certificates are therefore highly valuable, and the gem grading labs and/or GIA
gem drop-off locations that are authorized to issue such certificates have a huge
12 advantage over and are much more highly regarded than those that lack GIA
affiliation.

13
10. Beginning in 1991, and during all relevant times, the Stoccos were
14 employees of GIA. As referenced above, on or about December 1, 1991, the
Stoccos entered into an employment agreement, with GIA-GEM Instruments
15 Corporation, a wholly owned subsidiary of GIA. GIA issued pay checks and
W2s to the Stoccos. The employment agreement was entered into by the
16 Stoccos, and required the Stoccos to open GIA's first European GIA location and
to relocate to Vicenza, Italy to do so. The employment agreement provided:
17 "Point of Origin/Country of Origin: Santa Monica, CA U.S.A." A copy of the
employment agreements and initial pay check is attached as Exhibit "1" hereto.
18
11. GIA-GEM Instruments Corporation's principal place of business was located
19 in Santa Monica, California and the employment agreements were entered into
in California. GIA-GEM Instruments is no longer a viable entity, having merged
20 back into Defendant GIA. GIA is the principal and successor to GIA-GEM
Instruments, and GIA's principal place of business is located in Carlsbad,
21 California.

22 12. In 1992, the Stoccos relocated from the United States to Italy for the sole
purpose of establishing the first European GIA location for GIA. Pursuant to
23 their employment agreement obligations, the Stoccos organized, opened and
directed the first GIA European location in Vicenza, Italy, (hereinafter "GIA
24 Italy"), to establish a gem grading school on behalf of GIA. GIA Italy was
created by GIA, and GIA Italy was a foreign affiliate and subsidiary wholly
25 owned by GIA.

26  13. In early 1992, GIA Italy opened under the leadership of the Stoccos. GIA
Italy rapidly became the hub of GIA's activities in Europe. In 1998, the GIA
27 school moved to an 8,000-square-foot state-of-the-art facility in Vicenza, Italy.
By 2003, GIA Italy had approximately 60 graduate gemologists per year. GIA
28 Italy had about 200 students enrolled in extension and design classes, and
another approximately 400 in the distance education classes. GIA Italy

enrollment included students from the United States and California. Similarly, Italian students worked in and visited California, U.S., while earning GIA gemologist degrees....

15. From 1993-2007, the Stoccos continued to work and live in Italy, drawing salaries from GIA Italy, which was wholly owned by Defendant GIA and an affiliate for purposes of the Social Security Administration. During this time period, the Stoccos asked GIA for documentation regarding their employment agreements as well as participation in pension, retirement and other employment benefit plans, but were repeatedly rebuffed in their requests for information. GIA did issue a proposed Salary Agreement between GIA and the Stoccos. The Agreement was dated February 2000, and signed by both Brook Ellis, Vice President of Education for GIA, and Seung-Hae Moon, Director of Global Education for GIA. A true and correct copy of the salary agreement is attached as Exhibit "2" hereto.

16. At all times, the Stoccos employee reviews were exemplary. In 1992, Bill Boyajean, GIA's President, wrote the Stocco's a letter indicating that the Stoccos were doing a great job for GIA. Thereafter, GIA executives continued to visit Italy and issue reports on the progress being made there. GIA had control and oversight of all operations at GIA in Italy.

17. In 2005, GIA and the Florence Chamber of Commerce negotiated an agreement whereby the Chamber of Commerce would provide financial support to GIA Italy so long as GIA Italy agreed to allow the construction of a gem grading lab or GIA gem drop-off location that would be authorized to issue GIA gem grading certificates.

18. In March 17,2005, GIA, by and through its attorney, indicated that it would establish a GIA lab but only with GIA's written consent, and would agree to conduct a feasibility study regarding establishing a GIA gem drop-off location that would be used for GIA gem grading. GIA further indicated in this letter that the decision to establish a GIA gem drop-off location in Florence would be at the sole discretion of GIA Italy.

19. In 2005, Baker, on behalf of GIA, entered into a written agreement with the Florence Chamber of Commerce to move GIA Italy to Florence, and open a GIA school, and a gem grading lab or GIA gem drop-off location authorized to issue GIA gem grading certificates. This agreement ("Firgem Agreement") was made and signed by Baker on behalf of GIA and GIA Italy. In exchange for GIA agreeing to open a GIA school and gem grading lab or GIA gem drop-off location authorized to issue GIA gem grading certificates, the Florence Chamber of Commerce (a quasi-governmental entity) agreed to provide GIA Italy with substantial financial support for a twenty (20) year period. [The Firgem Agreement provided support for both the local community, and GIA's operation in Italy which was headed and run by the Stoccos. (ECF No. 7 at 11:13-15)] Without agreeing to move forward with a gem grading lab and/or GIA gemdrop-off location, authorized to issue GIA gem grading certificates, the Florence Chamber of Commerce would not have entered into the Firgem Agreement. A true and correct copy of the Firgem Agreement, and a certified translation thereof, are attached as Exhibits "3" and "4" hereto.

20. A bank loan of approximately $350,000 Euros was taken out by GIA Italy with GIA's express and written permission to build out a space required for the new school and gem grading lab. This bank loan was obtained while the Stoccos, personally and as directors of GIA Italy, relied upon GIA's promise to

authorize access to GIA gem grading certificates.

21. On about October 31, 2007, Tawfic Farah, GIA's Vice-President for International Operations, sent a letter to the Florence Chamber of Commerce thanking it for its support of GIA and its Italy operations.

22. In or before 2007, GIA developed a scheme whereby they would attempt to convert GIA Italy to a franchise, and convert the Stoccos from employees to franchisees, and then withdraw support of GIA Italy. Tawfic Farah informed the Stoccos on or about August 20, 2007, that he was authorized to negotiate and conclude an agreement with the Stoccos to take over GIA Italy. Tawfic Farah pitched the idea as recognition for the Stocco's 16 years of hard work and dedication for GIA. Unbeknownst to the Stoccos, this was actually part of GIA's plan to vacate its Italy operation (and concurrently vacate its support for the Firgem Agreement).

23. In late 2007, GIA approached the Stoccos and offered them ownership of GIA Italy under a franchise agreement Concurrent with discussions regarding making the Stoccos franchisee owners, GIA sent the Stoccos a letter dated November 12, 2007, entitled "Resignation from Personnel Employment Agreement" seeking to have the Stoccos state that they had been paid all salary accrued vacation and reimbursable expenses to which they were entitled under their employment agreement. GIA further sought to force the Stoccos to agree that they had no claims against GIA. A true and correct copy of the attempted waiver of liability dated November 12, 2007, is attached as Exhibit "5" hereto....

25. Ultimately, a franchise agreement was entered into by GIA and GIA Italy. Concurrently, the stock of GIA Italy was transferred to the Stoccos personally. GIA did not provide the Stoccos a copy of the franchise offer circular. A true and correct copy of the franchise agreement is attached as Exhibit "6" hereto.

26. On or about April 10, 2008, Donna Baker resigned from the Firgem Agreement council personally, and delegated all of GIA's authority within the Firgem Agreement to GIA Italy. GIA Italy's authority to open a GIA gem drop-off location was confirmed in correspondence from Baker dated April 10, 2008, which stated that GIA, as a member of the Firgem Agreement, delegates GIA Italy all powers to make any and all decisions and enter into any agreements related to the Firgem Agreement. The Stoccos relied on the grants of authority and the Firgem Agreement in continuing to work with the Florence Chamber of Commerce towards a construction of a gem lab. A true and correct copy of the letter conferring GIA authority on GIA Italy is attached as Exhibit "7" hereto. [The existence of the gem grading lab agreement formed a material basis for the Stoccos agreeing to the franchise agreement. (ECF No. 7 at 12:27-18)]

27. In or about September 2010, construction on an actual lab for the purpose of issuing GIA gem certificates began in Florence, Italy. The Florence Chamber of Commerce issued all funds for the construction of the lab to GIA specifications for it to have the ability to issue GIA gem grading certificates. A director was also pursued [and retained (ECF No. 7 at 12:1-2)] to support operation of the new lab.

28. On or about March 22, 2011, GIA sent the Florence Chamber of Commerce a letter indicating that GIA would no longer allow a GIA drop-off service at the lab location in Florence, Italy. A true and correct copy of the letter dated March 22, 2011, is attached as Exhibit "8" hereto.

29. Later in 2011, the Stoccos were informed that the Florence Chamber of Commerce would not continue its support of GIA Italy because an authorized gem grading lab had still not been opened, GIA was no longer going to authorize GIA gem grading certificates, and GIA had seemingly withdrawn its support of GIA Italy. As a result of the loss of this expected source of significant revenue, the Stoccos are losing the revenue opportunity afforded other GIA locations, and GIA Italy is now going out of business. GIA Italy has lost all of the enrollments in its school, and has lost Florence Chamber of Commerce support....

46. GIA breached, and continues to breach, this written agreement by failing to comply with the terms of the agreement and by failing to provide any support to GIA Italy for the purpose of opening a gem grading lab authorized to issue GIA grading lab certificates.

47. The Stoccos have performed all of the conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the contract.

48. As a direct and proximate result of GIA's breach in its contractual obligations, the Stoccos have been damaged thereby in the sum not less than $3,150,000 (Three Million One Hundred and Fifty Thousand U.S. Dollars), plus interest at the legal rate according to proof....

52. In 2007, GIA represented to the Florence Chamber of Commerce and to the Stoccos that they intended to continue to support the gem lab and/or drop off location pursuant to the Firgem Agreement, but this representation was false. GIA did not intend to continue such support, and hid that fact until well after the franchise agreement with the Stoccos was complete. GIA entered into the franchise agreement with the Stoccos in 2007. Under the franchise agreement, the Stoccos were given the right to distribute GIA goods and services that bear the GIA trademark and name, GIA maintained significant control over operations, and GIA required payment for same. GIA ultimately withdrew support for the Firgem Agreement and GIA Italy, causing damages to the Stoccos in the amount not less than $3,150,000.

53. These representations were made by Defendant's President, Donna Baker, verbally to Plaintiffs in Florence, Italy, in or about 2007. Donna Baker also previously signed the Firgem Agreement with the President Luca Mantellassi of the Florence Chamber of Commerce. The Stoccos reasonably relied on these representations when entering into the franchise agreement, and would not have entered into the franchise agreement but for these representations. On September 7, 2011, the Stoccos discovered that GIA did not intend to abide by the Firgem Agreement, when Baker, on behalf of GIA terminated the agreement with the Stoccos and withdrew support from GIA Florence. The Florence Chamber of Commerce's backing and financial support of the Stoccos and the gem lab was premised on GIA's involvement and when GIA withdrew support, the Florence Chamber of Commerce followed suit.

54. As a direct and proximate result of GIA's breach in its contractual obligations, the Stoccos have been damaged thereby in the sum not less than $3,150,000 (Three Million One Hundred and Fifty Thousand U.S. Dollars), plus interest at the legal rate according to proof. GIA acts and omissions were willful wanton, malicious and oppressive, to the extent that should justify exemplary and punitive damages....

12cv1291

57. GIA's principal place of business and domicile is Carlsbad, California. As such, GIA had a duty to provide the Stoccos a copy of the franchise offering circular pursuant to California Corporations Code §31119 and other applicable law. GIA breached this duty and failed to disclose and provide the Stoccos a copy of the franchise offering circular required by law. GIA also had a duty to register the franchise, but failed to do so.

58. GIA's breach of duties and failure to disclose and provide the Stoccos a copy of the franchise offering circular has directly and proximately caused the Stoccos to suffer damages in an amount not less than $850,000, according to proof.

59. GIA's breach of duties and failure to disclose and provide the Stoccos a copy of the franchise offering circular was willful, and in addition to monetary damages is grounds for the Stoccos' rescission of the franchise agreement pursuant to California Corporations Code §31300 and other applicable law....

61. GIA has engaged in and continues to engage in, unlawful, fraudulent, and unfair practices, such as offering scholarships to students attending classes at wholly owned locations only, which are substantially likely to prejudice the fair competition of GIA Italy with other wholly owned GIA or gem grading schools in Europe. GIA engaged in conduct, severely injuring its employees, by using its powerful and trusted position as employer to induce its employees into entering into an agreement that would relieve GIA of certain of its obligations, cast those obligations on its employees, and then disassociating with those employees leaving its (prior) employees without the reasonable ability to satisfy those obligations.

62. The Florence Chamber of Commerce promised GIA Italy a 45% ownership stake in the gem lab in Florence, but then later GIA fraudulently and unfairly cancelled their support for the Stoccos and GIA Italy, directly and proximately causing damages to the Stoccos in the amount of $2,800,000 plus $1,150,000 per year.

63. As a direct and proximate result of GIA's conduct, as set forth herein, Defendants have received ill-gotten gains and/or profits, including, but not limited to money. Therefore, Defendants were and are unjustly enriched. Pursuant to Business & Professions Code § 17203, Plaintiffs seek injunctive relief and request restitution and/or disgorgement of all sums, including profits, obtained in violation of Business & Professions Code § 17200, et seq.

(ECF No. 7 at 3-15).

## APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica*

1  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

2       To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint

3  "does not need detailed factual allegations" but the "[f]actual allegations must be enough to

4  raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5  555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

6  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

7  of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to

8  dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*,

9  556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). "In sum, for a complaint to survive a motion to

10  dismiss, the non-conclusory factual content, and reasonable inferences from that content, must

11  be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

12  572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

13                                     **DISCUSSION**

14  **Claim Three for Breach of Written Contract**

15       In Plaintiffs' third claim for relief – breach of written contract – Plaintiffs allege that

16  the Defendant breached an agreement known as the "Firgem Agreement" which Plaintiffs

17  allege was entered into by Defendant and the Florence Chamber of Commerce when the

18  Articles of Incorporation were signed on May 23, 2005. (ECF No. 7 at 11-12). Plaintiffs

19  allege that "as a direct and proximate result of [Defendant's] breach in its contractual

20  obligations, [Plaintiffs] have been damaged...." *Id.*

21         **A.**    **Contentions of the Parties**

22       Defendant contends that claim three of the Complaint should be dismissed pursuant to

23  Federal Rule of Civil Procedure 12(b)(6) because "Plaintiffs' conclusory allegations do not

24  come close to satisfying the pleading standards recognized by the U.S. Supreme Court in

25  *Twombly* or *Ashcroft*." (ECF No. 10-1 at 7). Defendant asserts that "the 'Firgem Agreement'

26  is not an agreement at all. Rather, it is the articles of incorporation for the foundation, and it

27  does not memorialize any such bargained for exchange between the Florence Chamber of

28  Commerce and [Defendant], nor does it impose the obligations alleged by Plaintiffs." *Id.* at

12. Alternatively, Defendant contends that Plaintiffs lack standing to assert a claim for breach of any contract because Plaintiffs were employees of Defendant when the Articles of Incorporation were signed and were neither parties nor intended third-party beneficiaries to any contract. *Id.* at 15-16.

Plaintiffs assert that the Firgem Agreement is an enforceable contract and that it obligated Defendant "to authorize issuance of their globally recognized certificates." (ECF No. 12 at 11).   Plaintiffs contend that they are parties to the Articles of Incorporation because Plaintiff Frederick Stocco was "individually appointed in the Firgem Agreement as 'Mr. Frederico Stocco, … so that, in his own name and behalf, he may intervene at the signing of the [Firgem Agreement].…'" *Id.* Alternatively, Plaintiffs contend that they have standing to bring this claim as third-party beneficiaries on the grounds that "Plaintiffs are both individually and members of a class intended to benefit from the Firgem Agreement." *Id.* Finally, Plaintiffs contend that they are direct beneficiaries under the Articles of Incorporation because "GIA Italy is a stated beneficiary of the Firgem Agreement" and the Defendant "sold GIA Italy to the Plaintiffs, and assigned all rights and obligations under the Firgem Agreement to the Plaintiffs." *Id.*

**B.     Discussion**

In order to state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745 (Cal. Ct. Appeal 2001); 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570. "In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language." *Constr. Protective Servs., Inc., v. TIG Specialty Ins. Co.,* 29 Cal. 4th 189, 198-99 (2002).

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559.  In addition, "[a] third party that is only incidentally benefitted [sic] by a contract does not have standing to enforce the contract." *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal.

2010) (citing *Shurpin v. Elmhirst*, 148 Cal. App. 3d 94, 103 (1983) ("enforcement of contracts by those who are only incidentally benefitted is prohibited")).  "[T]he contracting parties' intent to confer a benefit on the third party must appear in the terms of the agreement."  *Andrew Smith Co.*, 754 F. Supp. 2d at 1133 (citing *Brinton v. Bankers Pension Services, Inc.*, 76 Cal. App. 4th 550, 558 (1999) (internal quotations omitted)).  It is not necessary that the third party be named or identified individually to be an express beneficiary.  *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009) (citations omitted) (internal quotations omitted).  Rather, a third party can show "that he is a member of a class of persons for whose benefit [the contract] . . . was made."  *Id.*

In this case, documents attached to the Complaint show that representatives of Defendant, the Florence Chamber of Commerce and the University of Florence signed the Articles of Incorporation on May 23, 2005, forming the "Firenze Scienze Gemmologiche' Foundation."  (ECF No. 7-1 at 96-114).  The Articles of Incorporation state that Plaintiff Frederick Stocco was "present to this Act in his capacity as a proxy of [Defendant] by virtue of a special proxy issued to him by the President of [Defendant] GIA."  *Id.* at 98.  The Articles of Incorporation state that "Federico Stocco" was one of seven members appointed to "the first Board of the Foundation."  *Id.* at 100-101.  Plaintiffs allege that they acquired GIA Italy in "late 2007," over two years after the Articles of Incorporation were signed on May 23, 2005. (ECF No. 7 at 6).  On April 10, 2008, Defendant's President, Donna Baker ("Baker"), sent a letter to the "Firgem Foundation c/o FIA Florence s.r.l." stating that Defendant was "resigning as Council Member of the Firgem Foundation" and that Defendant "delegates GIA Florence s.r.l. with offices in Florence ... all powers to make any decisions and conclude any agreements relative to the Foundation."  (ECF No. 7-2 at 55).

There are no facts alleged in the Complaint to support Plaintiffs' claim that they are parties to any contract formed by the Articles of Incorporation; Plaintiff Frederick Stocco signed the Articles of Incorporation as a proxy on Defendant's behalf, and his membership on the Board of the "Firgem Foundation" brought with it no contractual rights or obligations. There are no facts alleged in the Complaint to support Plaintiffs' claim that they are third-party

beneficiaries to any contract formed by the Articles of Incorporation. Plaintiffs have alleged no facts showing that they "expressly ... benefit[ted]" from the Articles or that Plaintiffs belong to a "class of persons" that the founders intended to benefit when the Articles were signed. *See* Cal. Civ. Code § 1559; *see also Andrew Smith Co.*, 754 F. Supp. 2d at 1133 ("A third party that is only incidentally benefitted [sic] by a contract does not have standing to enforce the contract."); *Shurpin*, 148 Cal. App. 3d at 103 ("Enforcement of contracts by those who are only incidentally benefitted is prohibited."); *Spinks*, 171 Cal. App. at 1023. There are no facts alleged in the Complaint to support Plaintiffs' claim that they are direct beneficiaries to any agreement between the founding members of the Firgem Foundation after acquiring GIA Italy; in the April 10, 2008 letter, Baker permitted Plaintiff to "make any decisions" and "conclude any agreements" related to the Foundation, but did not assign to Plaintiff any contractual rights or obligations that Defendant may have had pursuant to the Articles of Incorporation. Based on the facts alleged in the Complaint, the Court concludes that Plaintiffs lack standing to assert a breach of contract claim against Defendant. The Motion to Dismiss as to claim three of the Complaint is granted.

**Claim Four for Fraud in the Inducement**

In Plaintiffs' fourth claim for relief – fraud in the inducement – Plaintiffs allege that they reasonably relied on false representations of the Defendant when they entered into the franchise agreement to operate GIA Italy in Florence. (ECF No. 7 at 12-13). Plaintiffs allege that the Defendant's false representations, which they "reasonably relied on," formed the material basis for Plaintiffs' agreement to franchise with Defendant and that Plaintiffs would not have entered into the franchise agreement but for these representations. *Id.* Plaintiffs allege that "[a]s a direct and proximate result of [Defendant's] breach of [the Firgem Agreement], [Plaintiffs] have been damaged...." *Id.* at 13.

    **A.    Contentions of the Parties**

Defendant asserts that "Plaintiffs cannot plausibly claim that they were induced to enter into a 2007 License Agreement" based upon any representations of Defendant that it would open a gem grading lab authorized to issue certificates. (ECF No. 13 at 9). Defendant

contends that Plaintiff could not have reasonably relied on any representations from Defendant that it would open a gem grading lab because the 2007 License Agreement "expressly prohibits [Plaintiffs] from operating such a lab or drop-off location." *Id.*  Defendant asserts that any alleged oral agreement to the contrary "is simply not plausible and should be disregarded." (ECF No. 10-1 at 21).  Defendant contends: "[i]t is clear ... that in light of the actual language of the Firgem articles and the provision of the Licensing Agreement prohibiting [Plaintiffs] from operating a gem grading laboratory ... [the] allegations ... should be dismissed." *Id.* at 19.

Plaintiffs contend that the Complaint "meets [the] pleading requirements, and the motion to dismiss should be denied." (ECF No. 12 at 13).  Plaintiffs assert that Defendant had an obligation under the Articles of Incorporation to "authorize issuance of GIA certificates" and that this obligation served as a "primary basis for the [Plaintiffs] agreeing to accept ownership of GIA Italy." *Id.* at 12.  Plaintiffs contend that "[b]y cutting off the lifelines of GIA Italy (and intending to do so at the time of entering into the Franchise Agreement as specified in the Defendant's moving papers), [Defendant] committed fraud." *Id.* at 12-13.

**B.    Discussion**

To recover for common law fraud under California law, Plaintiffs must demonstrate: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). Claims of fraud and fraudulent conduct are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir.2003); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004) (explaining that Rule 9(b) requires that the claimant allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations.").

In the Complaint, Plaintiffs alleged:

In 2007, GIA represented to the Florence Chamber of Commerce and to the Stoccos that they intended to continue to support the gem lab and/or drop off location pursuant to the Firgem Agreement, but this representation was false....

> These representations were made by Defendant's President, Donna Baker, verbally to Plaintiffs in Florence, Italy, in or about 2007. Donna Baker also previously signed the Firgem Agreement with the President Luca Mantellassi of the Florence Chamber of Commerce. The Stoccos reasonably relied on these representations when entering into the franchise agreement, and would not have entered into the franchise agreement but for these representations.

(ECF No. 7 at 13).     However, Plaintiffs attached to the Complaint a 2007 License Agreement, entered into by Plaintiffs and Defendant, which stated in part:

> 3.6 No Gem Grading or Identification Services. Licensee, its affiliates, owners, managers, members, agents, and employees will not operate any trade-service laboratory for the purpose of diamond grading, colored stone grading, or gem identification, without the prior written consent of GIA in each instance....

(ECF No. 7-2 at 7).  In light of the License Agreement's provision explicitly prohibiting Plaintiffs from operating a grading laboratory, the Court concludes that it is not plausible for Plaintiffs to have reasonably relied on any prior representations of continued support for such a laboratory when they signed the License Agreement.  The Motion to Dismiss as to claim four of the Complaint is granted.  *See Balistreri*, 901 F.2d at 699 (Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory).

**Claim Five for Failure to Provide Franchise Offering Circular**

In the fifth claim for relief, Plaintiffs allege that the Defendant willfully breached its duty to provide Plaintiffs with a copy of the "franchise offering circular" and register the franchise, in violation of California Corporations Code section 31119.  (ECF No. 7 at 14). Plaintiffs allege that the Defendant's breach of duty "directly and proximately caused the Stoccos to suffer damages" and "is grounds for [Plaintiff's] rescission of the franchise agreement pursuant to California Corporations Code § 31300 and other applicable law."  *Id.*

A.      **Contentions of the Parties**

Defendant contends that claim five should be dismissed on the grounds that California Corporations Code section 31119 does not apply to the franchise agreement and the claim is time-barred by the statute of limitations.  (ECF No. 10-1 at 21-22).  Defendant asserts that Plaintiffs were residents of Italy at the time the 2007 "International GIA Authorized Education Agreement" ("License Agreement") was signed and that "California's Franchise Investment

1     Law specifically exempts extraterritorial franchise sales." *Id.* at 22. Defendant asserts that

2     Plaintiffs claim was not brought within the four year statutory period pursuant to California

3     Corporations Code section 31303. *Id.*

4          Plaintiffs contend that California Corporations Code section 31119 applies to the sale

5     of GIA Italy to Plaintiffs because "the franchise's business and services were provided to

6     customers located inside California" and "GIA Italy enrollment included students from the

7     United States and California." (ECF No. 12 at 13). Plaintiffs contend that the statute of

8     limitations has not expired on their fifth claim because it "was filed within one year of

9     Plaintiffs' discovery of the Defendant's breach." *Id.*

10        **B.**      **Discussion**

11     California Corporations Code section 31303 provides:

12        No action shall be maintained to enforce any liability created under Section
         31300 unless brought before the expiration of four years after the act or
13        transaction constituting the violation, [or] the expiration of one year after the
         discovery by the plaintiff of the fact constituting the violation ... **whichever**
14        **shall first expire**.

15     Cal. Corp. Code § 31303 (West 2012) (emphasis added).

16          Documents attached to the Complaint show that the "act or transaction" in this case, i.e.

17     the signing of the License Agreement, occurred on December 20, 2007, over four years and

18     five months before Plaintiffs filed this action on May 29, 2012. (ECF No. 7-2 at 4-30). The

19     Court concludes that claim five is barred by the statute of limitations. *See People ex rel. Dep't*

20     *of Corps. v. Speedee Oil Change Systems, Inc.*, 95 Cal.App.4th 709, 727, 116 Cal.Rptr.2d 497

21     (Cal.Ct.App.2002) ("Once the four-year ... period expires, a plaintiff's belated discovery of the

22     fact constituting the violation cannot serve to extend the statute of limitations. In other words,

23     the four-year ban in section 31303 ... [is] absolute."). The Motion to Dismiss as to claim five

24     of the Complaint is granted.

25    **Claim Six for California Unfair Business Practices**

26          In the sixth claim for relief, Plaintiffs allege that the Defendant "engaged in[,] and

27     continues to engage in, unlawful, fraudulent and unfair [business] practices ... directly and

28     proximately causing damages to [Plaintiffs]" in violation of California Business & Professions

Code section 17203.  (ECF No. 7 at 15).

### A.    Contentions of the Parties

Defendant contends that Plaintiffs' sixth claim should be dismissed on the grounds that Plaintiffs have failed to "allege any facts to allow the Court ... to determine if its claim is 'plausible on its face.'" (ECF No. 10-1 at 23).  Defendant asserts that the allegations in claim six are "mere conclusions couched as fact" and that "there is no reasonable inference that the defendant is liable for the misconduct alleged." (ECF No. 13 at 11).  Alternatively, Defendant contends that California Business & Professions Code section 17200 does not apply to this claim because Plaintiffs are not California residents and the allegedly harmful conduct of Defendant did not occur in California, but in Italy.  *Id.*  Defendant asserts that California Business & Professions Code section 17200 "was neither designed nor intended to regulate claims of non-residents arising from conduct occurring entirely outside of California."  (ECF No. 10-1 at 24).

Plaintiffs assert that in order for claim six to survive a motion to dismiss, "[a]ll that is required is that the Defendant receive fair notice of the claim and its grounds."  (ECF No. 12 at 14).  Plaintiff contends:

> As pleaded, the Defendant is on fair notice of the claim and its grounds. It is an unfair business practice to enter into agreements that significantly benefit a subsidiary, and then to sell that subsidiary to an employee via a franchise agreement (or license agreement, as referenced by the Defendant), only to then breach those agreements claiming they don't exist and leaving the franchisee/licensee without the benefits of the original bargain. That is bad faith, and the Defendant should not be rewarded for such conduct.

*Id.*

### B.    Discussion

California's Unfair Competition Law ("UCL") "bans unfair business practices and authorizes injunctive and restitutionary relief against any person who engages in unfair competition." *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (citing Cal. Bus. Prof. Code §§ 17200, 17203) (internal quotations omitted).  In *Norwest Mortgage, Inc. v. Superior Court*, the court held that "state statutory remedies may be invoked by out-of-state parties [only] when they are harmed by wrongful conduct occurring in California." *Norwest Mortgage, Inc.,* 72 Cal.App.4th at 224–225; *see also Sullivan v. Oracle*

*Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially.  Accordingly, the presumption against extraterritoriality applies to the UCL in full force.").

In the Complaint, Plaintiffs allege that Defendant "offer[ed] scholarships to students attending classes at wholly owned locations only, which are substantially likely to prejudice the fair competition of GIA Italy with other wholly owned GIA or gem grading schools in Europe." (ECF No. 7 at 14).  Plaintiffs allege that Defendant "use[d] its powerful and trusted position as employer to induce its employees into entering into an agreement that would relieve [Defendant] of certain of its obligations, cast those obligations on its employees, and then disassociating with those employees leaving its (prior) employees without the reasonable ability to satisfy those obligations." *Id.* at 15.  Plaintiffs allege that "[t]he Florence Chamber of Commerce promised GIA Italy a 45% ownership stake in the gem lab in Florence, but then later [Defendant] fraudulently and unfairly cancelled their support for the Stoccos and GIA Italy...." *Id.*

Plaintiffs do not allege that the Defendant engaged in any unfair business practices within California.  Plaintiffs, as residents of Italy, are not permitted to bring a claim for unfair business practices under California's UCL for conduct that allegedly occurred entirely outside of California.  *See Norwest Mortgage, Inc.,* 72 Cal.App.4th at 224–225 (explaining that the presumption against extraterritoriality cannot be overcome with respect to the UCL because the statute "contains no express declaration that it was designed or intended to regulate claims of nonresidents arising from conduct occurring entirely outside of California.").  The Court concludes that Plaintiffs have failed to allege facts that are "plausibly suggestive of a claim entitling the plaintiff to relief" under California's UCL.  *Moss*, 572 F.3d at 969.  The Motion to Dismiss as to claim six of the Complaint is granted.

//

//

//

1

## CONCLUSION

2        IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 10) filed by

3 Defendant Gemological Institute of America, Inc. is GRANTED.  Claims three, four, five

4 and six of the Complaint are dismissed.

5 DATED:  January 3, 2013

6                                  *William Q. Hayes*
                             **WILLIAM Q. HAYES**

7                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv1291