1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11
12
13

FREDERICK STOCCO, an individual;
KATHLEEN STOCCO, an individual;
and GIA FLORENCE SRL, an Italian
company.

14

Plaintiffs,

vs.

15
16
17

GEMOLOGICAL INSTITUTE OF
AMERICA, INC., a California
Corporation; and Does 1 through 100,

Defendant.

CASE NO. 12-CV-1291 WQH (DHB)

**ORDER**

18

HAYES, Judge:

19
20

The matter before the Court is the Motion to Dismiss filed by Defendant Gemological Institute of America, Inc ("GIA").  (ECF No. 33).

21

**PROCEDURAL BACKGROUND**

22
23
24
25

On April 19, 2012, Plaintiffs Frederick Stocco and Kathleen Stocco filed a Complaint against GIA in the Superior Court of California for the County of San Diego. (ECF No. 1).  On May 29, 2012, GIA removed the Complaint to this Court.  (ECF No. 1-3).

26
27
28

On July 10, 2012, Plaintiffs Frederick and Kathleen Stocco filed a First Amended Complaint, alleging the following claims for relief against GIA: (1) fraudulent misrepresentation; (2) negligence; (3) breach of written contract; (4) fraud in the

inducement; (5) failure to provide franchise offering circular in violation of California Corporation Code § 31119; and (6) unfair business practices in violation of California Business & Professions Code § 17203. *Id.*

On July 20, 2012, GIA filed a motion to dismiss claims three, four, five, and six of the Complaint. (ECF No. 10). On January 3, 2013, the Court granted GIA's motion to dismiss in its entirety. (ECF No. 14). The Court concluded that Plaintiffs Frederick and Kathleen Stocco lacked standing to assert claim three, for breach of contract, because "there are no facts alleged in the Complaint to support [the] claim that they are direct beneficiaries to any agreement between the founding members of the Firgem Foundation after acquiring GIA Italy." *Id.* at 10. The Court concluded that claim five, for failure to provide franchise offering circular, was barred by the applicable statute of limitations because "the signing of the License Agreement[] occurred on December 20, 2007, over four years and five months before [Plaintiffs Frederick and Kathleen Stocco] filed this action...." *Id.* at 13.

On May 28, 2013, Plaintiffs Frederick Stocco, Kathleen Stocco, and GIA Florence SRL ("GIA Italy") (collectively, "Plaintiffs") filed the Second Amended Complaint ("Complaint") against GIA. The Complaint contains the following claims for relief: (1) fraudulent misrepresentation, brought by Plaintiffs Frederick and Kathleen Stocco; (2) negligence, brought by Plaintiffs Frederick and Kathleen Stocco; (3) breach of written contract, brought by GIA Italy; and (4) failure to provide franchise offering circular in violation of California Corporation's Code § 31119, brought by all Plaintiffs. (ECF No. 29).

On June 7, 2013, GIA filed the Motion to Dismiss claims three and four of the Complaint. (ECF No. 33). On July 1, 2013, Plaintiffs filed an opposition. (ECF No. 34). On July 8, 2013, GIA filed a reply. (ECF No. 36).

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs Frederick and Kathleen Stocco are United States Citizens. GIA, "the global leader in gem grading," is a California corporation with its "principal place of

business/headquarters in the City of Carlsbad, ... California." (Complaint ¶¶ 1, 9, ECF No. 29). "[GIA Italy] is an Italy company, wholly owned by the Stoccos." *Id.* ¶ 3.

"GIA represent[s] itself ... as a nonprofit institute, whose mission is to 'ensure the public trust in gems and jewelry by upholding the highest standard of integrity, academics, science, and professionalism through education, research, laboratory services, and instrument development.'" *Id.* "A GIA gem grading certificate significantly increases the value of a gem across the world. The GIA gem grading certificates can only be issued by gem grading labs authorized by GIA to issue GIA gem grading certificates. GIA's gem grading certificates are therefore highly valuable, and the gem grading labs and/or GIA gem drop-off locations that are authorized to issue such certificates have a huge advantage over and are much more highly regarded than those that lack GIA affiliation." *Id.*

"Beginning in 1991, and during relevant times, the Stoccos were employees of GIA. [O]n December 1, 1991, the Stoccos entered into an employment agreement, with GIA-GEM Instruments Corporation, a wholly owned subsidiary of GIA." *Id.* ¶ 10. "The employment agreements were entered into by the Stoccos, and required the Stoccos to open GIA's first European GIA location and to relocate to Vicenza, Italy to do so." *Id.* "The employment agreements provided: 'Point of Origin/Country of Origin: Santa Monica, CA U.S.A.'" *Id.* (quoting Pl. Exh. 1, ECF No. 29-2 (copies of employment agreements)).

"GIA-GEM Instruments Corporation's principal place of business was located in Santa Monica, California and the employment agreements were entered into in California. GIA-GEM Instruments is no longer a viable entity, having merged back into Defendant GIA. GIA is the principal and successor to GIA-GEM Instruments, and GIA's principal place of business is located in Carlsbad, California." *Id.* ¶ 11.

"In 1992, the Stoccos relocated from the United States to Italy for the sole purpose of establishing the first European GIA location for GIA. Pursuant to their employment agreement obligations, the Stoccos organized, opened and directed the first

GIA European location in Vicenza, Italy, (GIA Italy), to establish a gem grading school on behalf of GIA.  GIA Italy was created by GIA, and GIA Italy was a foreign affiliate and subsidiary wholly owned by GIA (as of 1992)." *Id.* ¶ 12.

"In early 1992, GIA Italy opened under the leadership of the Stoccos." *Id.* ¶ 13. "By 2003, GIA Italy had approximately 60 graduate gemologists per year. GIA Italy had about 200 students enrolled in extension and design classes, and another approximately 400 in the distance education classes. GIA Italy enrollment included students from the United States.  Similarly, Italian students worked in and visited California, U.S., while earning GIA gemologist degrees." *Id.*

From 1993 to 2007, "the Stoccos continued to work and live in Italy, drawing salaries from GIA Italy, which was wholly owned by Defendant GIA...." *Id.* ¶ 15.  "At all times, the Stoccos' employee reviews were exemplary.  In 1992, Bill Boyajean, GIA's President, wrote the Stoccos a letter indicating that the Stoccos were doing a great job for GIA." *Id.* ¶ 16. "Thereafter, GIA executives continued to visit Italy and issue reports on the progress being made there. GIA had control and oversight of all operations at GIA in Italy." *Id.* ¶17.

"In 2005, GIA and the [Florence] Chamber of Commerce negotiated an agreement whereby the Chamber of Commerce would provide financial support to GIA Italy so long as GIA Italy agreed to allow the construction of a gem grading lab or GIA gem drop-off location that would be authorized to issue GIA gem grading certificates." *Id.* ¶ 17.

On March 17, 2005, "GIA, by and through its attorney, indicated that it may establish a GIA lab but only with GIA's written consent, and would agree to conduct a feasibility study regarding establishing a GIA gem drop-off location that would be used for GIA gem grading. GIA further indicated in this letter that the decision to establish a GIA gem drop-off location in Florence would be at the sole discretion of GIA Italy." *Id.* ¶ 18.

"In 2005, Donna Baker, GIA's President, on behalf of GIA, entered into a written

agreement with the Florence Chamber of Commerce to move GIA Italy to Florence, and open a GIA school and a GIA gem drop-off location authorized to issue GIA gem grading certificates." *Id.* ¶ 19*; see also* Pl. Exhs. 3-4, ECF No. 29-2 (copies of the Italian original and English translation of the 2005 "agreement," entitled the "Articles of Incorporation" of the "Firenze Scienze Gemmologiche Foundation," referred to by Plaintiffs as "the Firgem Agreement").

> This agreement ('Firgem Agreement') was made and signed by Baker on behalf of GIA and GIA Italy. In exchange for GIA agreeing to open a GIA school and GIA gem drop-off location authorized to issue GIA gem grading certificates, the Florence Chamber of Commerce (a quasi-governmental entity) agreed to provide GIA Italy with substantial financial support for a twenty (20) year period. Without agreeing to move forward with at least a GIA gem drop-off location authorized to issue GIA gem grading certificates, the Florence Chamber of Commerce would not have entered into the Firgem Agreement.

(Complaint ¶ 19, ECF No. 29).

> GIA Italy was an intended third-party beneficiary to the Firgem Agreement.... The Firgem Agreement provided that GIA would 'Manage the analysis of precious stones and metals by issuing GIA Carlsbad certificates (reports) recognized worldwide.' This clause in the Firgem Agreement means that GIA agreed to allow the issuance of GIA gem grading certificates. The Firgem Agreement further provided that it had a 'duration of twenty years.' The Firgem Agreement provided support for both the local Ital[ian] community and GIA Italy.

*Id.* ¶ 43.

"A bank loan of approximately $350,000 Euros was taken out by GIA Italy with GIA's express and written permission to build out a space required for the new school and gem grading lab. This bank loan was obtained while the Stoccos, personally and as directors of GIA Italy, relied upon GIA's promise to authorize access to GIA gem grading certificates." *Id.* ¶ 20.

On October 31, 2007, "Tawfic Farah, GIA's Vice-President for International Operations, sent a letter to the Florence Chamber of Commerce thanking it for its support of GIA and its Italy operations." *Id.* ¶ 21.

"In or before 2007, GIA developed a scheme whereby it would attempt to convert GIA Italy to a franchise, and convert the Stoccos from employees to franchisees, and then withdraw support of GIA Italy." On August 20, 2007, "Tawfic Farah informed the

Stoccos ... that he was authorized to negotiate and conclude an agreement with the Stoccos to take over GIA Italy.  Tawfic Farah pitched the idea as recognition for the Stoccos' 16 years of hard work and dedication for GIA. Unbeknownst to the Stoccos, this was actually part of GIA's plan to vacate its Italy operation (and concurrently vacate its support for the Firgem Agreement)."  *Id.* ¶ 22.

> In late 2007, GIA approached the Stoccos and offered them ownership of GIA Italy under a franchise agreement. Concurrent with discussions regarding making the Stoccos franchisee owners, GIA sent the Stoccos a letter dated November 12, 2007, entitled 'Resignation from Personnel Employment Agreement' seeking to have the Stoccos state that they had been paid all salary accrued vacation and reimbursable expenses to which they were entitled under their employment agreements. GIA further sought to force the Stoccos to agree that they had no claims against GIA....

*Id.* ¶ 23; Pl. Exh. 5, ECF No. 29-3 (copy of November 12, 2007 letter); Pl. Exhs. 6-7, ECF Nos. 29-3, 29-4 (copies of the 2007 and 2009 "franchise agreements"). "GIA offered the Stoccos ownership of GIA Italy under [the] franchise agreement, and Frederick Stocco, as President of GIA Florence SRL, ultimately entered into [the] franchise agreement with GIA." *Id.* ¶ 50. "GIA ... transferred full ownership of GIA's Italy operations to the Stoccos via [the] franchise agreement." *Id.* ¶ 44.

On April 10, 2008, "Donna Baker resigned from the Firgem Agreement council personally, and delegated all of GIA's authority within the Firgem Agreement to GIA Italy. GIA Italy's authority to open a GIA gem drop-off location was confirmed in correspondence from Baker dated April 10, 2008, which stated that GIA, as a member of the Firgem Agreement, delegates [to] GIA Italy all powers to make any and all decisions and enter into any agreements related to the Firgem Agreement." *Id.* ¶ 26; Pl. Exh. 8, ECF No. 29-4 (copy of April 10, 2008 letter). "The Stoccos relied on the grants of authority and the Firgem Agreement in continuing to work with the Florence Chamber of Commerce towards a construction of a gem lab." *Id.*; *see also id.* ¶ 44 ("The Stoccos relied on the 2008 grant of authority in pursuing the gem lab and/or drop-off window location with the Florence Chamber of Commerce and pursuant to the Firgem Agreement.").

On January 1, 2009, "[the 2007] franchise agreement was replaced and superseded by a 2009 agreement.  Concurrently, the stock of GIA Italy was transferred to the Stoccos personally.  GIA did not provide the Stoccos a copy of the franchise offer circular...."  *Id.* ¶ 25; *see also id.* ¶ 50.  Under the 2009 franchise agreement, which was entered into between GIA and GIA Florence SRL, "GIA authorized a license in exchange for royalty payments."  *Id.*

In September 2010, "construction on an actual lab for the purpose of issuing GIA gem certificates began in Florence, Italy. The Florence Chamber of Commerce issued all funds for the construction of the lab to GIA specifications for it to have the ability to issue GIA gem grading certificates. A director was also pursued to support operation of the new lab."  *Id.* ¶ 27.  "A lab and/or drop-off window was subsequently built, and a director was retained to assist with running the new gem lab."  *Id.* ¶ 44.

On March 22, 2011, "GIA sent the Florence Chamber of Commerce a letter indicating that GIA would no longer allow a GIA drop-off service at the lab location in Florence, Italy."  *Id.* ¶ 28; Pl. Exh. 9, ECF No. 29-4 (copy of March 22, 2011 letter).  "Later in 2011, the Stoccos were informed that the Florence Chamber of Commerce would not continue its support of GIA Italy because an authorized gem grading lab had still not been opened, GIA was no longer going to authorize GIA gem grading certificates, and GIA had seemingly withdrawn its support of GIA Italy."  *Id.* ¶ 29.  "As a result of the loss of this expected source of significant revenue, the Stoccos are losing the revenue opportunity afforded other GIA locations, and GIA Italy is now going out of business.  GIA Italy has lost all of the enrollments in its school, and has lost Florence Chamber of Commerce support."  *Id.*

"GIA breached the Firgem Agreement by resigning from and withdrawing support for the Firgem Agreement and then declining to provide any support to GIA Italy for the purpose of opening a gem drop-off window in Florence that was authorized to issue GIA gem grading certificates."  *Id.* ¶ 45.  "GIA breached, and continues to breach, this written agreement by failing to comply with the terms of the agreement and

by failing to provide any support to GIA Italy for the purpose of opening a gem grading drop-off window authorized to issue GIA grading certificates." *Id.* ¶ 46. "GIA Italy has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the contract." *Id.* ¶ 47. "As a direct and proximate result of GIA's breach in its contractual obligations, GIA Italy has been damaged thereby in a sum in accordance with proof at trial." *Id.* ¶ 48.

"GIA's principal place of business and domicile is Carlsbad, California. As such, GIA had a duty to provide the Plaintiffs a copy of the franchise offering circular pursuant to California Corporations Code § 31119 and other applicable law. GIA breached this duty and failed to disclose and provide the Plaintiffs a copy of the franchise offering circular required by law. GIA also had a duty to register the franchise, but failed to do so." *Id.* ¶ 51. "GIA's breach of duties and failure to disclose and provide the Plaintiffs a copy of the franchise offering circular has directly and proximately caused the Plaintiffs to suffer damages in an amount not less than $850,000, according to proof." *Id.* ¶ 52. "GIA's breach of duties and failure to disclose and provide the Plaintiffs a copy of the franchise offering circular was willful, and in addition to monetary damages is grounds for the Plaintiffs' rescission of the franchise agreement pursuant to California Corporations Code § 31300 and other applicable law." *Id.* ¶ 53.

## APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a

complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## DISCUSSION

### I.  Claim Three: Breach of Written Contract

In claim three, for breach of written contract, GIA Italy alleges that GIA breached the "Firgem Agreement," i.e., the Articles of Incorporation to the Firgem Foundation, by (1) "resigning from and withdrawing support for the Firgem Agreement and then declining to provide any support to GIA Italy for the purpose of opening a gem drop-off window in Florence that was authorized to issue GIA gem grading certificates;" and (2) "failing to comply with the terms of the Firgem Agreement and by failing to provide any support to GIA Italy for the purpose of opening a gem grading drop-off window authorized to issue GIA grading certificates." (Complaint ¶¶ 45-46, ECF No. 29).

### A.  Articles of Incorporation of the Firgem Foundation

Documents attached to the Complaint show that representatives of GIA, the Florence Chamber of Commerce and the University of Florence signed the Articles of Incorporation on May 23, 2005, forming the "Firenze Scienze Gemmologiche Foundation." (Pl. Exh. 4 at 98, ECF No. 29-2 at 98). The Articles of Incorporation state: "The purpose of the Foundation, which is not for profit and is apolitical, shall be to exclusively pursue goals that encourage and support the creation of a multi-purpose

center to promote study and research in the field of gemology, in particular with regard to certification and study of diamonds, gemstones, and precious metals; to promote training, study and research in the field of gold jewelery design and production." *Id.* at 104. The Articles of Incorporation further state, in pertinent part:

> The Foundation will provide economic and financial support of the Foundation's initiatives, delegating to [GIA Italy] the operational part of the activities and providing the premises of the Foundation to the above as a 'free of charge loan for use.'
>
> The activity that [GIA Italy] will carry out independently will be aimed at:
> 1. Performing the analysis of precious stones and metals, issuing globally recognized GIA Carlsbad certificates;
> 2. Performing Gemological training according to GIA Carlsbad study plans issuing worldwide recognized diplomas;
> 3. Managing training and study of goldsmith design according to GIA Carlsbad study plans to be reconciled and harmonized with the culture and history of Florence and issuing diplomas that are customized for this purpose to be made globally recognized;
> 4. Managing the training of goldsmith worker training in the fields of production, sales and marketing according to GIA Carlsbad study plans to be customized and connected to the history and tradition of Florence;
> 5. Encouraging the emergence and growth of interest and international businesses to be located in Florence.
> ...
> The Foundation shall not engage in activities other than those listed above except those that are instrumental and directly related to it and in any case not prevalent.
>
> To achieve its institutional goals, the Foundation may perform any operation involving securities, real estate, financial or property related, that the deliberative bodies deem appropriate and in accordance with the organization's goals, and carry out any activity that, taking into account the specific and contingent needs, is complementary and helpful, and that is therefore directly related to the activity of the organization.
>
> The Foundation, therefore, among other things, as examples, may:
> - grant awards and scholarships;
> - purchase and take possession of assets and real estate, facilities, equipment, and material that are useful, necessary to carry out their activity and provide for their administration and management;
> - stipulate agreements to outsource parts of the activities;
> - perform, incidentally and instrumentally to the pursuit of the institutional goals, marketing activities, also with reference to the publishing and and audiovisual fields in general and that of advertising accessory items (gadgets and the like).
>
> The Foundation may be a member and participate in other organizations, having a legal entity or not, Italian or foreign, which share common goals or goals related to its own or that, working in fields related to their own, can specifically contribute to the Foundation in terms of human organizational, property or financial resources.

*Id.* at 105-06.

**B.    Contentions of the Parties**

GIA contends claim three should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  GIA contends:

> Plaintiffs' third claim for relief suffers from the same fatal defects as its predecessor.  First, the 'Firgem Agreement' is not an agreement at all.  Rather, it is the Articles of Incorporation for the Foundation, and it does not memorialize any bargained for exchange between the Florence Chamber of Commerce and GIA, nor does it impose the obligations alleged by Plaintiffs.  Second, GIA Italy is not a party to this document and has no standing to assert its breach.  Lastly, GIA Italy never had any authority to open a gem grading laboratory or other identification services, even after the Stoccos acquired GIA Italy in 2007, as the 2007 License Agreement and the subsequent 2009 License Agreement expressly prohibited GIA Italy from doing so.

(ECF No. 33-1 at 12).

GIA Italy contends that the Complaint states a claim for breach of contract.  GIA Italy contends the Complaint adequately alleges (1) that the Articles of Incorporation is an agreement, and that GIA breached that agreement; (2) that GIA Italy is a third-party beneficiary to the Articles of Incorporation; and (3) that "Plaintiffs had authority to open a gem drop-off location and issue GIA certificates."  (ECF No. 34-1 at 2).

**C.    Analysis**

In order to state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages.  *First Commercial Mortg. Co. v. Reece,* 89 Cal. App. 4th 731, 745 (2001).  "In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language."  *Constr. Protective Servs., Inc., v. TIG Specialty Ins. Co.,* 29 Cal. 4th 189, 198-99 (2002).

A contract must be interpreted in a manner that gives effect to the mutual intent of the parties if that intent can be ascertained.  Cal. Civ. Code § 1636.  "Ambiguities in contractual language are construed against the drafter."  *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986).  "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."

*Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000); *see also Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994) ("A motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract."). A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 855 (1993). Language in a contract must be interpreted as a whole and in the circumstances of the case. *Bank of W. v. Superior Court*, 2 Cal. 4th 1254 (1992). A motion to dismiss a claim for breach of contract should not be granted where the contract "leaves doubt as to the parties' intent." *Consul Ltd.*, 802 F.2d 1149; *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008); *Robinson v. Bank of Am.*, 12-CV-00494-RMW, 2012 WL 1932842 (N.D. Cal. May 29, 2012) (same).

Under California law, a third party may enforce a contract if the contract is "made expressly for the benefit of a third person...." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985) (citing *Strauss v. Summerhays*, 157 Cal. App. 3d 806, 816 (1984)). Although a third party need not be expressly named or identified in a contract, a party must demonstrate "that [it] is a member of a class of persons for whose benefit it was made." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009). "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Id.* at 1022 (quoting *Johnson v. Holmes Tuttle Lincoln–Merc.*, 160 Cal. App. 2d 290, 297 (1958)). "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Landale–Cameron Court, Inc. v. Ahonen*, 155 Cal. App. 4th 1401,

1411 (2007) (quotation and citation omitted).

The Complaint alleges that, "[f]rom 1993-2007, the Stoccos continued to work and live in Italy, drawing salaries from GIA Italy, which was wholly owned by Defendant GIA." (Complaint ¶ 15, ECF No. 29). The Complaint alleges that the parties to the May 23, 2005 Articles of Incorporation agreed that "the Chamber of Commerce would provide financial support to GIA Italy so long as GIA Italy agreed to allow the construction of a gem grading lab or GIA gem drop-off location that would be authorized to issue GIA gem grading certificates." (Complaint ¶ 17, ECF No. 29). The Complaint alleges that GIA Italy "expressly ... benefit[ted]" from and was a third-party to the Articles of Incorporation. The Articles of Incorporation state, in pertinent part: "The Foundation will provide economic and financial support of the Foundation's initiatives, delegating to [GIA Italy] the operational part of the activities and providing the premises of the Foundation to the above as a 'free of charge loan for use.'" (Pl. Exh. 4 at 105, ECF No. 29-2 at 105). Immediately following the provision regarding "the Foundation's initiatives," the Articles of Incorporation state: "The activit[ies] that [GIA Italy] will carry out independently will be aimed at," *inter alia*, "[p]erforming the analysis of precious stones and metals, issuing globally recognized GIA Carlsbad certificates...." *Id.* (emphasis added). Reading the two provisions together and in the context of the entire document, and drawing all reasonable inferences from the non-conclusory factual content of the Complaint, the Court finds it plausible that the parties to the Articles of Incorporation intended for "the Foundation [to] provide economic and financial support" to GIA Italy (at that time the "wholly owned subsidiary" of GIA) in exchange for the issuance of GIA-authorized certificates at a gem lab or drop-off location. (Pl. Exh. 4 at 105, ECF No. 29-2 at 105; Complaint ¶ 15, ECF No. 29); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Assuming, without deciding, that the parties to the Articles of Incorporation did

intend to confer rights or benefits on GIA Italy (the "wholly owned subsidiary" of GIA), the Court finds that the factual allegations of the Complaint plausibly suggest that such rights or benefits have been transferred to, and can be enforced by, Plaintiff GIA Italy (the entity currently owned by Plaintiffs Frederick and Kathleen Stocco). *See* Complaint ¶ 15, ECF No. 29 ("In 2007, GIA ... transferred full ownership of GIA's Italy operation to the Stoccos via a franchise agreement.... A January 1, 2009, franchise agreement replaced and superseded the 2007 franchise agreement."); *id.* ¶ 26 ("Donna Baker resigned from the Firgem Agreement council personally, and delegated all of GIA's authority within the Firgem Agreement to GIA Italy. GIA Italy's authority to open a GIA gem drop-off location was confirmed in correspondence from Baker dated April 10, 2008, which stated that GIA, as a member of the Firgem Agreement, delegates [to] GIA Italy all powers to make any and all decisions and enter into any agreements related to the Firgem Agreement."); Pl. Exh. 8, ECF No. 29-4 (April 10, 2008 letter from Baker to the Foundation).

At this stage of the proceedings, the Court concludes that Plaintiff GIA Italy has alleged "sufficient facts to support a cognizable legal theory" as to the breach of contract claim. *Balistreri*, 901 F.2d at 699. The Motion to Dismiss claim three is denied. *See id.*; *see also Consul Ltd.*, 802 F.2d at 1149 (a motion to dismiss a claim for breach of contract should not be granted where the contract "leaves doubt as to the parties' intent.").

## II.   Claim Four: Failure to Provide a Franchise Offering Circular

In claim four, Plaintiffs allege that GIA failed to "disclose," failed to "register," and failed to "provide the Plaintiffs [with] a copy of the franchise offering circular pursuant to California Corporations Code [§] 31119 and other applicable law." (Complaint ¶ 51, ECF No. 29). Plaintiffs allege that, as a result of GIA's "willful" "breach of duties and failure to disclose and provide the Plaintiffs a copy of the franchise offering circular," they have been damaged "in an amount not less than $850,000" and are entitled to rescind the franchise agreement pursuant to California

Corporations Code § 31119.  *Id.* ¶¶ 52-53.

### A.   Contentions of the Parties

GIA contends claim four should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) GIA Italy operated exclusively outside the State of California and, thus, the 2009 License Agreement is exempted from California's Franchise Investment Law; (2) Plaintiffs have failed to allege that any "offer or sale of a franchise actually occurred in 2009," as would be required to state a claim for violation of California's Franchise Investment Law; and (3) the claim is barred by the four-year statute of limitations of California's Franchise Investment Law.  (ECF No. 33-1 at 20).

Plaintiffs contend that claim four is "based upon the 2009 license agreement," which was entered into less than four years prior to the filing of this action on May 29, 2012.  (ECF No. 34-2 at 13).  Plaintiffs contend they have stated a claim for failure to provide a franchise offering circular because (1) the Complaint adequately alleges that "[GIA] was required to issue a franchise offering circular, and ... failed to do so;" and (2) the Complaint adequately alleges that "the franchise's services included services to California residents."  (ECF No. 34-1 at 2).  Plaintiffs contend that "the franchise's business and services were provided to customers located inside California." (ECF No. 34-2 at 13).  Plaintiffs assert:

> As specified in the SAC, [GIA Italy] had about 200 students enrolled in extension and design classes, and another approximately 400 in the distance education classes.... [GIA Italy] enrollment included students from the United States and California....  Similarly, Italian citizens worked in and visited California while earning GIA gemologist degrees....

*Id.* (citations omitted).

### B.   Analysis

#### 1.   2007 GIA Authorized Education Agreement

California Corporations Code § 31110, a provision of California's Franchise Investment Law, provides: "On and after April 15, 1971, it shall be unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has

1  been registered under this part or exempted under Chapter 1 (commencing with Section

2  31100) of this part."  Cal. Corp. Code § 31110.

3         California Corporations Code § 31119 provides, in part:

4              It is unlawful to sell any franchise in this state that is subject to
       registration under this law without first providing to the prospective
5       franchisee, at least 14 days prior to the execution by the prospective
       franchisee of any binding franchise or other agreement, or at least 14 days
6       prior to the receipt of any consideration, whichever occurs first, a copy of
       the offering circular, together with a copy of all proposed agreements
7       relating to the sale of the franchise.

8  Cal. Corp. Code § 31119(a).

9         California Corporations Code § 31300 provides, in part:

10             Any person who offers or sells a franchise in violation of Section
       31101, 31110, 31119, 31200, or 31202, or in violation of any provision of
11      this division that provides an exemption from the provisions of Chapter 2
       (commencing with Section 31110) of Part 2 or any portions of Part 2, shall
12      be liable to the franchisee or subfranchisor, who may sue for damages
       caused thereby, and if the violation is willful, the franchisee may also sue
13      for rescission....

14  Cal. Corp. Code § 31300.

15        California Corporations Code § 31303 provides, in part:

16             No action shall be maintained to enforce any liability created under
       Section 31300 **unless brought before the expiration of four years after**
17      **the act or transaction** constituting the violation, [or] the expiration of one
       year after the discovery by the plaintiff of the fact constituting the
18      violation ... **whichever shall first expire**.

19  Cal. Corp. Code § 31303 (emphasis added).

20        The Complaint alleges: "In late 2007, GIA approached the Stoccos and offered

21  them ownership of GIA Italy under a franchise agreement." (Complaint ¶ 23, ECF No.

22  29).  Documents attached to the Complaint show that a GIA Authorized Education

23  Agreement was entered into on December 20, 2007 ("2007 Agreement"), roughly four

24  years and five months before Plaintiffs initiated this action on May 19, 2012. (Pl. Exh.

25  6, ECF No. 29-3 (copy of the 2007 Agreement)).  Accordingly, to the extent claim four

26  alleges that the 2007 Agreement failed to comply with California's Franchise

27  Investment Law, the Court concludes that claim four is barred by the statute of

28  limitations.  *See* Cal. Corp. Code § 31303; ECF No. 14 (same conclusion in Order

granting GIA's motion to dismiss First Amended Complaint); *see also People ex rel. Dep't of Corps. v. Speedee Oil Change Systems, Inc.*, 95 Cal. App. 4th 709, 727 (2002) ("Once the four-year ... period expires, a plaintiff's belated discovery of the fact constituting the violation cannot serve to extend the statute of limitations. In other words, the four-year ban in section 31303 ... [is] absolute.").

### 2.   2009 GIA Authorized Education Agreement

California Corporations Code § 31105 provides:

> Any offer, sale, or other transfer of a franchise, or any interest in a franchise, to a resident of another state or any territory or foreign country, shall be exempted from the provisions of Chapter 2 (commencing with Section 31110) of this part, **if all locations from which** sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside this state.

Cal. Corp. Code § 31105 (emphasis added).

The Complaint alleges that the 2007 Agreement "was replaced and superseded by a 2009 agreement" between GIA and GIA Italy, in which "GIA authorized a license in exchange for royalty payments." (Complaint ¶¶ 25, 50, ECF No. 29). The Complaint alleges: "Concurrently, the stock of GIA Italy was transferred to the Stoccos personally. GIA did not provide the Stoccos a copy of the franchise offer circular...." *Id.* ¶ 25.

Documents attached to the Complaint show that GIA and GIA Italy entered into a GIA Authorized Education Agreement on January 1, 2009 ("2009 Agreement"). (Pl. Exh. 7, ECF No. 29-4 (copy of the 2009 Agreement)). The 2009 Agreement states that GIA Italy is "a company existing under the laws of Italy, with a registered office in Piazza Santa Trinita, I 50123 Firenze, Italy." *Id.* at 2. In opposition to the Motion to Dismiss, Plaintiffs Frederick and Kathleen Stocco acknowledge that they resided in Italy, not California, at the time the 2009 Agreement was formed. *See* ECF No. 34-2 at 13. Accordingly, any "offer, sale, or other transfer of a franchise" to Plaintiffs that occurred pursuant to the 2009 Agreement is exempt from California Corporations Code § 31119, so long as "all locations from which sales, leases or other transactions between

12CV1291 WQH (DHB)

[GIA Italy] and its customers are made, or goods or services are distributed, are physically located outside [California]."  Cal. Corp. Code § 31105.

The Complaint alleges, in pertinent part:

> In early 1992, GIA Italy opened under the leadership of the Stoccos. By 2003, GIA Italy had approximately 60 graduate gemologists per year. GIA Italy had about 200 students enrolled in extension and design classes, and another approximately 400 in the distance education classes. GIA Italy enrollment included students from the United States.  Similarly, Italian students worked in and visited California, U.S., while earning GIA gemologist degrees.

(Complaint ¶ 13, ECF No. 29).

The "Recitals" section of the 2009 Agreement states: "[GIA Italy] desires a license from GIA to conduct and deliver GIA's education program in [Italy], and GIA desires to grant such a license to [GIA Italy], subject to the terms and conditions in this Agreement."  (Pl. Exh. 7 at 2, ECF No. 29-4 at 2).  The 2009 Agreement further states, in pertinent part:

> GIA grants to [GIA Italy] a non-transferable, non-assignable, royalty-bearing license, in [Italy], without the right to sublicense, (i) to solicit enrollments in the GIA Education Programs at the Facility, (ii) to provide registration, instruction, administration, and other support services for the students who enroll in the GIA Education Program offered by [GIA Italy] at the Facility. [GIA Italy] may only conduct the GIA Education Program at the Facility....

*Id.* at 4.  The 2009 Agreement defines "Facility" as "the facility located at the address set forth in the preamble of this Agreement," i.e., GIA Italy's address in Firenze, Italy. *Id.* at 3.

While the Complaint alleges that "Italian students worked in and visited California ... while earning GIA gemologist degrees," Complaint ¶ 13, ECF No. 29, the Complaint contains no allegations suggesting that GIA Italy conducts any transactions or distributes any goods or services from a location physically within California. Moreover, the 2009 Agreement appears to explicitly prohibit any otherwise authorized business activities from occurring outside of GIA Italy's "Facility" located in Firenze, Italy. *See* Pl. Exh. 7 at 4, ECF No. 29-4 at 4 (2009 Agreement stating that "[GIA Italy] may only conduct the GIA Education Program at the Facility").  The Court finds that

Plaintiffs have failed to allege that any "sales leases or other transactions between" GIA Italy and its customers are made **from** a location physically within California, or that GIA Italy distributes any "goods or services" **from** a location physically within California. Cal. Corp. Code § 31105.  Absent any such allegations, the Court concludes that any transfer of a franchise or interest in a franchise that resulted from the 2009 Agreement is "exempted from the provisions of" California Corporations Code § 31110, *et seq*.  Cal. Corp. Code § 31105.  The Motion to Dismiss claim four is granted.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 33) filed by Defendant Gemological Institute of America, Inc. is **GRANTED** as to claim four, and otherwise **DENIED**.  Claim four of the Second Amended Complaint is **DISMISSED**.

DATED:  September 24, 2013

**WILLIAM Q. HAYES**
United States District Judge